UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
------------------------------------------------------------------X
THERESA J. CUSATIS,

*Plaintiff*,

**VERIFIED COMPLAINT**
**AND JURY DEMAND**

Civil Action No. _____

CITY OF NIAGARA FALLS,

*Defendant*,
------------------------------------------------------------------X

     Plaintiff, THERESA J. CUSATIS, by and through her attorneys, THE LAW OFFICE OF LINDY KORN, PLLC, hereby complains of the Defendant, CITY OF NIAGARA FALLS, upon information and belief, as follows:

## NATURE OF THE CLAIMS

1. Ms. Cusatis seeks the appropriate remedies and damages for discriminatory treatment based on hostile work environment because of sex, race discrimination, and retaliation for opposing discrimination in violation of Title VII of the Civil Rights Act of 1964, as amended., (42 U.S.C. 2000e et. seq).

## JURISDICTION AND VENUE

2. This Court has jurisdiction over this action pursuant to 42 U.S.C. §§ 2000e-5 and 28 U.S.C. §§ 1331 and 1343.

3. Venue is proper in this Court based upon Ms. Cusatis's residency within Niagara County, Defendant is located in Niagara County, and a substantial part of the acts or omissions giving rise to the Ms. Cusatis's claims occurred in Niagara County.

## THE PARTIES

4. At all times, Plaintiff, THERESA J. CUSATIS ("Ms. Cusatis"), is a resident of the State of New York, Niagara County.

5. Ms. Cusatis is female and engaged in protected activity when she complained of employment discrimination to Defendant's Human Resources department.

6. Ms. Cusatis is Caucasian and has congenial relationships with her co-workers, including African-American male colleagues.

7. At all relevant times, Defendant CITY OF NIAGARA FALLS is local municipality duly existing by virtue of the laws of the State of New York and is located at 745 Main Street, Niagara Falls, New York 14301.

8. At all relevant times, Ms. Cusatis worked at Defendant's offices located at the LaSalle Senior Center located at 9501 Colvin Boulevard, Niagara Falls, New York 14304 or the John A. Duke Senior Center located at 1201 Hyde Park Boulevard, Niagara Falls, New York 14301.

9. At all relevant times, over fifteen (15) employees worked for Defendant.

## EXHAUSTION OF ADMINISTRATIVE REMEDIES

10. Ms. Cusatis exhausted her administrative remedies as a prerequisite to bringing this claim as follows:

11. On or about October 5, 2018, Ms. Cusatis filed a charge of discrimination with the Equal Employment Opportunity Commission (E.E.O.C.).  On November 16, 2018, Ms. Cusatis received a letter dated November 14, 2018 from the E.E.O.C. acknowledging receipt of her charge of employment discrimination.  The E.E.O.C. assigned the Federal Charge No. 525-2019-0061.

12. On August 20, 2019, the EEOC mailed Ms. Cusatis a 'Dismissal and Notice of Rights' letter showing she exhausted her administrative remedies.  Ms. Cusatis's representative received this 'Dismissal and Notice of Rights' letter on August 22, 2019.

## MATERIAL FACTS

13. In July 1992, Defendant hired Ms. Cusatis as a Senior Services Aide.

14. As a Senior Services Aide, Ms. Cusatis's job duties included assisting senior citizen participants of LaSalle and Duke senior centers with their needs related to the mission of Defendant's Division of Senior Services.  For example, Ms. Cusatis served as a liaison for all human and senior service agencies, city, and governmental programs offered; provided information and referrals to agencies and programs; also assessed needs, registers, and provides information to seniors; and, keeps records, inspects building and grounds, and does secretarial work, as needed.

15. On November 22, 2017, Ms. Cusatis discovered a box inside of the maintenance workers' closet in the room behind her office that had Ms. Cusatis's initials on it ("TC") and the racial slur "NGR LOVE(r)."

16. Deeply offended and afraid, Ms. Cusatis immediately reported this incident to the Defendant's Director of Public Works John Caso and Human Resource Director Ruby Pulliam.

17. Upon information and belief, Defendant never conducted an investigation into Ms. Cusatis's report of racial slurs in the workplace, which targeted Ms. Cusatis.  Ms. Cusatis believed she was being targeted because of her association with African-American co-workers.

18. Fearful and afraid, Ms. Cusatis contacted, multiple times, the New York State Attorney General's office to report the workplace race discrimination.  Ms. Cusatis notified Supervisor Caso, Director Caso, and Director Pullium of her report to New York State.

19. Ms. Cusatis also reported this incident to the City of Niagara Falls Police.

20. On Wednesday, December 6, 2017, Ms. Cusatis experienced a workplace sexual assault when Defendant's client, a male participant, forcibly grabbed Ms. Cusatis's breasts. This incident occurred at approximately 2:50 pm near the end of Ms. Cusatis's shift, inside the LaSalle Senior Center. At the time, Ms. Cusatis knew this participant for approximately three years. Specifically, he was a senior citizen participant in the programs offered by Defendant's Division of Senior Services.

21. Ms. Cusatis pushed the male participant's hands away from her body and told him "no" and to "get out." Ms. Cusatis fell into shock from the sexual assault.

22. In response, the male participant told Ms. Cusatis: "I don't like a nigger-lover anyway."

23. Ms. Cusatis found this racial slur used by the male participant to be repugnant, vile, and entirely inappropriate for the workplace or anywhere else for that matter.

24. The male participant's behavior towards Ms. Cusatis was unwelcome, aggressive, and distressing.

25. The next day on Thursday, December 7, 2017, the male participant called Ms. Cusatis's work office phone two times in the morning at approximately 10:30 am. These were unwelcomed phone calls. This happened at work.

26. Ms. Cusatis found the male participant's attempts to reach out to her unwelcome and distressing, in light of the physical assault the day before.

27. Fearing for her safety, Ms. Cusatis verbally reported the workplace sexual assault and racist slur to her direct supervisor, Rebecca ("Becky") Caso, Senior Services Program Coordinator ("Supervisor Caso").

28. When reporting the racial slur to Supervisor Caso, Supervisor Caso remarked to Ms. Cusatis: "Just because you date black men, doesn't mean you should be called that." Supervisor Caso assumed that Ms. Cusatis had relationships with African-American men because Ms. Cusatis has an

African-American co-worker, who is also in her union.  Ms. Cusatis found it disturbing that Supervisor Caso made assumptions about her personal life when the focus should have been on the vile behavior and words of the male participant.

29. Ms. Cusatis also verbally reported the workplace sexual assault to John Caso, Director of Public Works ("Director Caso").  Director Caso is Supervisor Caso's boss and also husband.

30. Ms. Cusatis also complained to Human Resource Director Pulliam about the workplace sexual assault.

31. Ms. Cusatis also reported the workplace sexual assault and racist slur to the City of Niagara Falls Police Department.

32. Despite Ms. Cusatis's immediate complaints of workplace sexual assault, sexual harassment, harassment, and racial discrimination to Defendant management and human resource department, on Monday, December 11, 2017, the male participant arrived at Ms. Cusatis's place of work for a senior citizen luncheon.

33. Shocked to see the male participant at her place of work after the December 6, 2017 workplace sexual assault and her multiple complaints to Defendant, Ms. Cusatis told the male participant to leave and not return to the LaSalle Senior Center.  This was also witnessed by a county employee.

34. Later that day, Ms. Cusatis submitted a detailed written complaint of the sexual assault and subsequent harassment perpetrated by the male participant to Director Caso, in the hope that she would be protected from future workplace sexual harassment from the male participant.

35. Despite her written complaint on December 14, 2017, the male participant again attempted to contact Ms. Cusatis, this time calling Ms. Cusatis's personal cell phone.  This was an unwelcomed phone call.  Ms. Cusatis immediately reported this harassment to Supervisor Caso.

36. Finally, on or about December 14, 2017, more than a week after the sexual assault against Ms. Cusatis, Defendant notified the male participant by letter that he was officially banned from the LaSalle Senior Center building and from the premises.  The male participant was specifically prohibited from contacting Ms. Cusatis.

37. On December 15, 2017 Ms. Cusatis spoke, again, to Supervisor Caso about the sexual assault. Specifically, Ms. Cusatis informed Supervisor Caso that she had contacted Director Pulliam about the workplace sexual assault.

38. On December 18, 2017 Ms. Cusatis went to Human Resources to complain in-person to Director Pulliam.  Director Pulliam was not present.  Ms. Cusatis left a message with the Human Resource department, but never received a phone call back from Director Pulliam.

39. Upon information and belief, on January 2, 2018, the male participant contacted Director Caso and Supervisor Caso and admitted to sexually assaulting Ms. Cusatis at the LaSalle Senior Center.

40. Despite Defendant's knowledge of the male participant's unwelcome and dangerous behavior, Ms. Cusatis continued to experience workplace sexual harassment by the male participant well into June 2018.

41. For example, the male participant called Ms. Cusatis on her office phone and personal cell phone at least six to eight times from December 2017 until June 2018.  As soon as Ms. Cusatis recognized the caller as the male participant, she immediately ended the phone call at work or did not answer the call, as Ms. Cusatis has caller identification on her cell phone.

42. Ms. Cusatis continued to experience racial slurs in her workplace.  For example, in May - June 2018, Ms. Cusatis received voicemails from the male participant on her work phone where he repeatedly said "mud shark."  Upon information and belief, "mud shark" is a racially derogatory term for a Caucasian woman who engages in sexual conduct with African-Americans.

43. Ms. Cusatis found the second racial slur used by the male participant to be repugnant, vile, and entirely inappropriate for the workplace or anywhere else for that matter.

44. Each and every time Ms. Cusatis received a harassing phone call from the male participant between December 2017 and June 2018, Ms. Cusatis reported this harassment to Supervisor Caso.

45. Ms. Cusatis also reported the harassment, again, to Director Caso.

46. On July 11, 2018 Ms. Cusatis also escalated her complaints, again, to Human Resource Director Pulliam, who responded, "Did he [the male participant] do anything to you since December?  No?"  Despite Ms. Cusatis's concerns for her personal safety at work, Director Pulliam told Ms. Cusatis, "It was handled."  Director Pulliam asked Ms. Cusatis "Why should he be banned from the Duke?" and, incredulously, "So, what's the problem?"  When Ms. Cusatis inquired to Director Pulliam who else she could complain to, Director Pulliam replied, "I don't know."

47. Director Pulliam, Director Caso, and Supervisor Caso took no remedial action to prevent the male participant from continuing to harass Ms. Cusatis at work.

48. Despite Ms. Cusatis's complaints and the severity of the sexual harassment she experienced at the hands of the male participant, Defendant entirely failed to remedy the continuing workplace harassment that Ms. Cusatis continued to suffer at the hands of the male participant.

49. Upon information and belief, Defendant *knew prior* to Ms. Cusatis's physical assault that the male participant previously sexually assaulted a female senior participant who also attends the LaSalle Senior Center.

50. Specifically, the male participant approached a female senior participant and grabbed one of her breasts.  This incident happened during a social visit at the male participant's home.  This female senior participant told the male participant that she didn't want him to do this, and not to do it again.

51. The female senior participant's family blocked the male participant's phone number from her cell phone and home phone, in order to stop the male participant from attempting to contact the female senior participant.

52. The physical sexual assault against the female senior participant occurred in or around early to mid-November 2017, approximately one month before the male participant assaulted Ms. Cusatis at work.

53. Upon learning about the female senior participant's sexual assault from the female senior participant, Ms. Cusatis immediately reported it to Supervisor Caso in November 2017.  Upon information and belief, Supervisor Caso spoke to the female senior participant after Ms. Cusatis brought this sexual assault to her attention.

54. On July 5, 2018 Ms. Cusatis went to her personal vehicle parked on the LaSalle Senior Center premises.  While retrieving an article from her car, the male participant accosted Ms. Cusatis from behind.  As soon as Ms. Cusatis recognized the male participant's voice, she fled her vehicle for the building.

55. Ms. Cusatis reported this incident to Supervisor Caso.  Supervisor Caso took no remedial action but instead told Ms. Cusatis the matter was "out of her hands" because it was a "personal matter."

56. On June 15, 2018 the male participant called Ms. Cusatis's personal cell phone two times at approximately 10:30 am.  These were unwelcomed phone calls.  This happened at work.

57. On June 28, 2018 the male participant called Ms. Cusatis's personal cell phone at 3:24 pm.  This was an unwelcomed phone call.

58. On June 29, 2018 the male participant called Ms. Cusatis's personal cell phone at 9:22 pm.  This was an unwelcomed phone call.

59. The workplace harassment continued.  A few days later on July 11, 2018, Ms. Cusatis and a Niagara County employee saw the male participant sitting in his car across the street from the LaSalle Senior Center.  The male participant was staring at Ms. Cusatis's car.

60. At least four times in July 2018, the male participant entered the LaSalle Senior Center parking lot, despite Defendant's written instruction to him banning him from the premises.

61. On July 20, 2018 the male participant called Ms. Cusatis's personal cell phone at 8:32 pm.  This was an unwelcomed phone call.

62. Upon information and belief, on July 26, 2018 the male participant approached a female at the LaSalle Senior Center with the mistaken belief it was Ms. Cusatis.  The male participant yelled at this individual, "Fuck you, Theresa!" and made a rude hand gesture.

63. On July 30, 2018 the male participant called Ms. Cusatis's personal cell phone at 12:57 pm.  This was an unwelcomed phone call.  This happened at work.

64. Ms. Cusatis reported all of these events to her direct supervisor, Supervisor Caso and to the police. Despite making yet another complaint about the male participant, Supervisor Caso did not take remedial action to protect Ms. Cusatis.

65. On August 3, 2018 the male participant called Ms. Cusatis's personal cell phone at 12:37 pm.  This was an unwelcomed phone call.  This happened at work.

66. On August 3, 2018 Ms. Cusatis found a print-out of an email chain in her desk at work at approximately 1 pm.  The emails contained pictures of multiple, scantily-clad women.  According to the sender address, the male participant sent the emails with the photos of scantily-clad women.

67. Ms. Cusatis feared for her safety and felt threatened that the male participant may have been in her office, despite Defendant's request not to be on the premises.

68. Ms. Cusatis reported this incident to Supervisor Caso who, upon information and belief, did nothing.

69. On August 10, 2018 the male participant called Ms. Cusatis's personal cell phone at 4:11 pm. This was an unwelcomed phone call.

70. On August 14, 2018 the male participant called Ms. Cusatis's personal cell phone at 1:55 pm. This was an unwelcomed phone call. This happened at work.

71. On August 18, 2018 the male participant called Ms. Cusatis's personal cell phone at 1:58 pm. This was an unwelcomed phone call. This happened at work.

72. On October 4, 2018 Ms. Cusatis and a co-worker witnessed in the LaSalle Senior Center parking lot the male participant drive up to Ms. Cusatis's car, defying Defendant's order not to enter the premises.

73. On October 26, 2018 Ms. Cusatis witnessed the male participant parked directly outside of her office window on 95th Street. The male participant waved, clapped his hands, and pointed at Ms. Cusatis. This was also witnessed by another senior participant.

74. On November 1, 2018, upon information and belief, the male participant walked the grounds of the LaSalle Senior Center at approximately 10 am.

75. On December 14, 2018, upon information and belief, the male participant taped a card onto Ms. Cusatis's car window. Ms. Cusatis's car was parked at work. Again, the male participant defied Defendant's order to not enter the LaSalle Senior Center premises.

76. Finally, after contacting the City of Niagara Falls police many, many times to report the male participant stalking her at work, the police arrested the male participant for putting the card on Ms. Cusatis's vehicle. Upon information and belief, the male participant admitted to putting the card

on Ms. Cusatis's vehicle. *This was the first time the male participant was arrested for the original charge of forcible touching from the December 6, 2017 incident.*

77. On December 14, 2018 the Honorable James J. Faso, Jr. issued a Temporary Order of Protection for Ms. Cusatis against the male participant until December 14, 2019. The Order of Protection ordered the male participant to leave Ms. Cusatis alone at her home, school, business, and place of employment, and also refraining from contacting Ms. Cusatis by "mail, telephone, e-mail, voice-mail or other electronic or any other means."

78. From December 2017 through December 2018, the male participant contacted Ms. Cusatis no less than at least twenty (20) times to harass, stalk, menace, and intimidate. The majority of the harassment occurred while Ms. Cusatis was at work or on work premises.

79. On October 5, 2018 Ms. Cusatis filed a charge of employment discrimination with the Equal Employment Opportunity Commission (E.E.O.C.) complaining of discrimination and retaliation.

80. On February 27, 2019 the male participant, once again, was arrested. This time, the male participant was arrested for stalking and harassing Ms. Cusatis while at work. *This is the second time that the male participant was arrested.*

81. Defendants not only failed to protect Ms. Cusatis at work but retaliated against Ms. Cusatis for reporting the workplace sexual assault/sexual harassment and racial slurs perpetrated by the male participant.

82. The retaliation for opposing discrimination that Ms. Cusatis experienced is ongoing and continues to this day.

83. For example, soon after reporting the sexual assault to Supervisor Caso, on December 14, 2017 Supervisor Caso started questioning the accuracy of Ms. Cusatis's payroll time records. This questioning happened multiple times despite Ms. Cusatis having no issues or problems with her

11

payroll time records in the past.  Supervisor Caso went as far as on December 21, 2017 to threaten Ms. Cusatis would not be paid if Ms. Cusatis did not give her time in a specific manner.

84. For example, Ms. Cusatis received the improper form when reporting the sexual assault.  She was given the "accident report" instead of the so-called "harassment report."  Ms. Cusatis later learned from Director Pulliam that the Defendant has no proper reporting form to document incidents between employees and non-employees.

85. For example, Director Caso neglected to forward Ms. Cusatis's report of sexual assault to Human Resource Director Pulliam within five (5) days, as required by Defendant policy.

86. Once Director Pulliam received Ms. Cusatis's complaint of workplace sexual assault, she never contacted Ms. Cusatis about correcting the form until seven months later after Ms. Cusatis contacted her.  On July 11, 2018, Director Pulliam asked Ms. Cusatis for the "proper" documentation of the assault.

87. For example, Defendant allowed the male participant to continue using the City of Niagara Falls senior services at the Duke Senior Center for one year, including five (5) months after the police issued a warrant for his arrest.  Defendant never called the police to report the male participant at the Duke Senior Center.

88. However, upon information and belief, the male participant approached Supervisor Caso during the summer of 2018 to notify her that he was going to go to City Hall to ask about going back to the LaSalle Senior Center.  Supervisor Caso called Director Caso, who called the Chief of Police. The Chief of Police notified the City Hall security to have the male participant arrested if he went to City Hall.  Ms. Cusatis received no similar protection from Defendant.

89. For example, Defendant isolated Ms. Cusatis by not allowing her to work at the Duke Senior Center for almost two years, missing out on senior programming events, overtime opportunities, and working with her colleagues.

90. For example, Defendant largely stopped assigning Ms. Cusatis overtime hours, something she received in the past prior to the workplace sexual assault.

91. For example, Defendant did not timely give Ms. Cusatis her W-2 for 2017 by January 31, 2018. Ms. Cusatis did not receive her W-2 until February 2018.

92. For example, Defendant no longer assigns City of Niagara Falls cleaning staff to clean the building she works in.

93. For example, Defendant consistently did not respond in a timely manner to needed and requested work orders for the LaSalle Senior Center, sometimes for weeks on end and despite repeated phone calls for the same work order.

94. For example, Defendant neglected to properly supply basic human necessities for employees and senior participants by not stocking toilet paper or soap in February, March and April 2018.  Ms. Cusatis called the local health department after her work orders were ignored by Defendant. Participants brought in toilet paper and soap for their own use.

95. For example, Defendants neglected to clear ice and snow from the doorway of the LaSalle Senior Center, creating a significant safety issue for employees and participants. Ms. Cusatis reported this problem multiple times.

96. For example on July 11, 2018, City Corporation Counsel, Craig Johnson, physically removed Ms. Cusatis out of his office by her elbow when she went to him for help after months of inaction by Defendant.

97. This dismissal of Ms. Cusatis's fears was reflected in Supervisor Caso's comment to Ms. Cusatis when she said, "I don't pay him [the male participant] any attention." Supervisor Caso made this comment on July 9, 2018.

98. For example, in July 2018 Defendant stopped picking up the trash from Ms. Cusatis's work site for a few weeks. Ms. Cusatis made work orders to get this work done.

99. In addition, Defendant stopped picking up the recycling from Ms. Cusatis's work site for the past two years, which has accumulated in the senior services office.

100. For example, on July 31, 2018 Defendant hired a contractor who started removing sidewalks leading up to the senior center, leaving no sidewalks for participants to walk on to enter the building. Ms. Cusatis received no prior notice of this work from Defendant and could not warn participants in advance. As a result, Ms. Cusatis helped seniors with walkers and canes cross uneven grass going up a slight hill to enter the senior center.

101. For example, for eight weeks in October-November 2018, Defendant neglected to repair or replace a new copying machine for the building that Ms. Cusatis worked in.

102. For example, on January 19, 2019 Defendant disconnected the second phone line to senior services without notice to Ms. Cusatis. After repeated phone calls by Ms. Cusatis over three months, the line was connected on March 22, 2019.

103. For example, Supervisor Caso, while at lunch at the LaSalle Senior Center, sat with a senior participant, who in turn later told Ms. Cusatis to "watch her back" with Supervisor Caso.

104. For example, Ms. Cusatis never received her 2018 official W-2 from Defendant. On February 15, 2019 Supervisor Caso gave Ms. Cusatis's official W-2 and paystubs to Emily Balkota, a non-civil service worker and cleaner, who left them, unsecured, in the lobby of the

building over the weekend.  On February 28, 2019 Ms. Cusatis learned that her W-2 and paystubs went missing.  Defendant never investigated this matter.

105.      For example, Defendant ceased posting job notices, postings, and employee communications in her workplace, further isolating Ms. Cusatis from her employer.

106.      On April 26, 2019 Ms. Cusatis was reassigned by written directive to report to the Administration building to sign-in for her time.  This is disparate treatment, as other similarly-situated employees are not required to do this.  Ms. Cusatis never received any notification of any problem regarding payroll and, therefore, given no chance to rectify any problem.

107.      On April 26, 2019 Defendant issued Ms. Cusatis a written directive stating she would need to go to the administration building to receive her paystubs.  This is disparate treatment, as no other similarly situated employee is required by Defendant to do this. Further, Defendant wrote on the notice: "This will also pertain to any future W2s that you *would* receive," implying that Ms. Cusatis would not have a job in the future.

108.      For example, in August 2019 Ms. Cusatis did not timely receive from Defendant the official form to buy back her vacation time.  This offer expires at the end of August every year.  Ms. Cusatis did not receive her form until September 27, 2019 from Defendant.

109.      For example, Supervisor Caso no longer speaks to Ms. Cusatis, her direct subordinate.  Supervisor Caso stopped directly speaking with Ms. Cusatis seven (7) months ago.  On occasion, Supervisor Caso texted Ms. Cusatis.

110.      Ms. Cusatis never received any notice from Defendant about receiving a new supervisor.

111.      For example, in September 2019, once again, Defendant disconnected the second phone line to senior services without giving notice to Ms. Cusatis.  This line remains disconnected.

112.     On September 23, 2019 Ms. Cusatis received a threatening written directive that she would be disciplined if she failed to sign her time sheet, despite the fact that Ms. Cusatis complied with the instructions from the original April 26, 2019 memo from Defendant.

113.     For example, Defendant never turned on the heat to the building Ms. Cusatis works in as of late October 2019, despite cold weather since September 2019.

114.     For example, in October 2019 Defendant mandated employees attend sexual harassment training, however, Ms. Cusatis never received any notice of this mandated training.   Upon information and belief, Defendant held at least three trainings at the Duke Senior Center, where Ms. Cusatis has been prohibited from going to for two years.

115.     As recently as November 5, 2019, the male participant went to Ms. Cusatis's place of work, the LaSalle Senior Center, for approximately fifteen (15) minutes.   Ms. Cusatis was present.   The police arrived and later arrested the male participant for breaking a permanent Order of Protection against him, which is in place from July 18, 2019 until July 18, 2021. *This is the third time that the male participant was arrested.*

116.     Before Defendant's illegal actions, Ms. Cusatis was trusting, friendly, funny, outgoing, happy, and involved.

117.     Ms. Cusatis describes herself now as feeling extremely depressed, angry, traumatized, isolated, shunned, paranoid, fearful, afraid, miserable, sad, and downtrodden.   As a result of Defendant's actions, Ms. Cusatis experienced nervousness, anxiousness, fear, anger, humiliation, degradation, embarrassment, feelings of inadequacy, and emotional distress.

118.     As a result of Defendant's actions, Ms. Cusatis experienced physical problems including panic attacks, insomnia, light sleep, nightmares, gained weight, stomach distress, colds, upper respiratory issues, and stress eating.

119.     Ms. Cusatis treats with a psychologist for adjustment disorder with symptoms of depression and anxiety.

120.     As a result of Defendant's actions, Ms. Cusatis has been damaged in an amount that exceeds the jurisdiction limits of all lower Courts.

121.     Defendant's actions were intentional and intended to harm Ms. Cusatis.

122.     Defendant's conduct has been malicious, willful, and outrageous.  As such, Ms. Cusatis demands punitive damages as against the Defendant.

## FIRST CAUSE OF ACTION
Hostile Work Environment because of Sex/Sexual Harassment in Violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. 2000e et. seq.

123.     Ms. Cusatis repeats each and every allegation set forth herein in the preceding paragraphs as though fully set forth herein.

124.     Defendant's actions were willful and not done in good faith.

125.     As a result of Defendant's conduct, Ms. Cusatis suffered great emotional harm.

126.     Ms. Cusatis is, therefore, entitled to relief including but not limited to liquidated damages on equitable and injunctive relief, an award of compensatory damages, expenses, and attorneys' fees and costs in an amount to be determined at trial.

## SECOND CAUSE OF ACTION
Race Discrimination in Violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. 2000e et. seq.

127.     Ms. Cusatis repeats each and every allegation set forth herein in the preceding paragraphs as though fully set forth herein.

128.     Defendant's actions were willful and not done in good faith.

129.     As a result of Defendant's conduct, Ms. Cusatis suffered great emotional harm.

130.     Ms. Cusatis is, therefore, entitled to relief including but not limited to liquidated damages on equitable and injunctive relief, an award of compensatory damages, expenses, and attorneys' fees and costs in an amount to be determined at trial.

### THIRD CAUSE OF ACTION
Retaliation for Opposing Discrimination in Violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. 2000e et. seq.

131.     Ms. Cusatis repeats each and every allegation set forth herein in the preceding paragraphs as though fully set forth herein.

132.     Defendant's actions were willful and not done in good faith.

133.     As a result of Defendant's conduct, Ms. Cusatis suffered great emotional harm.

134.     Ms. Cusatis is, therefore, entitled to relief including but not limited to liquidated damages on equitable and injunctive relief, an award of compensatory damages, expenses, and attorneys' fees and costs in an amount to be determined at trial.

### INJURY AND DAMAGES

135.     As a result of the acts and conduct complained herein, Ms. Cusatis has suffered and will continue to suffer the loss of overtime, bonuses, benefits and other compensation which such employment entails, and out-of-pocket medical expenses.  Ms. Cusatis has also suffered future pecuniary losses, emotional pain, suffering, inconvenience, and injury to her reputation, loss of enjoyment of life, and other non-pecuniary losses.  Ms. Cusatis has further experienced severe emotional and physical distress because of sex discrimination, race discrimination, and opposing discrimination, as herein described.

## PRAYER FOR RELIEF

WHEREFORE, Ms. Cusatis respectfully requests a judgment against the Defendant:

a.  Declaring that the Defendant's engaged in unlawful employment practices prohibited Title VII of the Civil Rights Act, As Amended, and that Defendant discriminated and retaliated against Ms. Cusatis;

b.  Awarding Ms. Cusatis economic damages;

c.  Awarding Ms. Cusatis compensatory damages for mental, emotional and physical injury, distress, pain and suffering, and injury to her reputation in an amount to be proven;

d.  Awarding Ms. Cusatis punitive damages;

e.  Awarding Ms. Cusatis attorney's fees, costs, and expenses incurred in the prosecution of this action;

f.  Awarding Ms. Cusatis such other and further relief that this Court may deem equitable, just and proper to remedy the Defendant's unlawful employment practices.

WHEREFORE, Ms. Cusatis demands judgment against Defendant, in an amount to be determined at trial plus interest, punitive damages, attorney's fees, costs, and disbursement of action, and for other such relief as this Court deems just and proper.

## DEMAND FOR JURY TRIAL

Pursuant to Rule 38(b) Fed. R. Civ. P., Plaintiff hereby demands a trial by jury for all issues triable of right by a jury in this case.

Dated: November 14, 2019
       Buffalo, New York

LINDY KORN, ESQ.
*Attorney for Plaintiff*


By: _____
        Lindy Korn, Esq.
        The Law Office of Lindy Korn, PLLC
        535 Washington Street, Ninth Floor
        Buffalo, New York 14203
        716-856-5676
        lkorn@lkorn-law.com

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
-------------------------------------------------------------------X
THERESA J. CUSATIS,

              *Plaintiff,*

                                               **VERIFICATION**

                                             Civil Action No. _____

CITY OF NIAGARA FALLS,

              *Defendant,*

-------------------------------------------------------------------X

       Theresa J. Cusatis, under penalty of perjury, deposes and says:

       I have read the attached Complaint captioned in this matter and find it to be true to my

knowledge, except as to matters alleged upon information and belief, which I believe to be true.

                                        _____
                                        THERESA J. CUSATIS

Sworn before me on this 14th day of November, 2019

_____
Notary Public

MUHAMAD KHALED
Notary Public, State of New York
No. 01KH6328945
Qualified in Erie County
Commission Expires Aug. 10, 20 23