UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

THERESA J. CUSATIS,

Plaintiff,

v.

CITY OF NIAGARA FALLS,

Defendant.

**DECISION AND ORDER**
19-CV-1536S

## I. Introduction

This is an employment discrimination and retaliation action where Plaintiff Theresa Cusatis ("Cusatis" or "Plaintiff") alleges sexual harassment and associational race discrimination by her former employer, the City of Niagara Falls ("City"). Presently before this Court is the City's Motion for Summary Judgment (Docket No. 35[1]).

For the reasons stated herein, the City's Motion (id.) is granted and Plaintiff's action is dismissed.

## II. Background

A. Facts Alleged in the Complaint (Docket No. 1)

In July 1992, the City hired Plaintiff as a senior services aide at the City's La Salle and Duke Senior Centers (Docket No. 1, Compl. ¶ 13).

On November 22, 2017, Plaintiff discovered a box inside a maintenance closet behind her office that had her initials ("TC") and a racial slur "NGR LOVE(r)" on it (id.

[1]In support of this Motion, the City of Niagara Falls submits its attorney's Declaration with exhibits; its Statement of Undisputed Facts; the Declaration of former human resources director Ruby Pulliam; its Memorandum of Law, Docket No. 35; and its Reply Memorandum of Law, Docket No. 50.

In opposition, Plaintiff submits her Response to Defendant's Statement of Material Facts, exhibits (including Plaintiff's Affidavit), and Plaintiff's Memorandum of Law, Docket No. 44.

¶ 15). Deeply offended and afraid, Plaintiff reported this box to director of public works, John Caso[2], and then-human resources director, Ruby Pulliam (id. ¶ 16). Plaintiff alleges, however, that the City did not investigate this matter (id. ¶ 17). She believes that she was targeted because of her association with African American coworkers (id.). Plaintiff also reported this incident to the Niagara Falls Police Department alleging workplace race discrimination (id. ¶¶ 18, 19).

On December 6, 2017, a male client of the City's senior center (or as identified later by Cusatis as "A.P.," Docket No. 44, Pl. Response at 6 n.3) sexually assaulted Plaintiff at the La Salle Center (id. ¶¶ 20-21). After being repelled by Cusatis, A.P. said, "I don't like a N___r lover anyway" (id. ¶ 22). The next day, A.P. called Plaintiff twice while at work (id. ¶¶ 25-26). Plaintiff reported the sexual assault and racist slur to her supervisor, Rebecca Caso (id. ¶ 27). Plaintiff also reported the assault to John Caso, human resources director Pulliam, and the Niagara Falls Police Department (id. ¶¶ 29, 30, 31).

On December 11, 2017, A.P. returned to the LaSalle Senior Center, Plaintiff's worksite (id. ¶¶ 32, 33). Shocked that he was there, Cusatis ordered A.P. to leave and to not return (id. ¶ 33). On December 14, A.P. attempted to contact Cusatis by calling her personal cellphone (id. ¶ 35). Plaintiff later reported this instance of harassment to Rebecca Caso (id.). Later that day, the City wrote to A.P. banning him from the LaSalle Center and prohibiting him from contacting Plaintiff (id. ¶ 36; see Docket No. 35, Def. Atty. Affirm. Ex. I; Docket No. 44, Pl. Atty. Affirm. Ex. K).

---

[2]John Caso also is the supervisor of his wife, Rebecca Caso. Rebecca Caso was Senior Service Coordinator and Cusatis' immediate supervisor. Docket No. 1, Compl. ¶¶ 29, 27; Docket No. 35, Def. Statement ¶ 6.

On January 2, 2018, A.P. contacted Mr. and Ms. Caso and admitting that he sexually assaulted Plaintiff (Docket No. 1, Compl. ¶ 39).

A.P., however, then continued to harass Plaintiff through 2018 (e.g., id. ¶¶ 40, 41-44, 56-58, 59-66), leaving Plaintiff racially insulting voice mails (id. ¶¶ 42-43). In one call, A.P. left a message repeatedly calling Cusatis a "mud shark," an apparent racially derogatory term for a White woman who engages with sexual contact with African Americans (id. ¶ 42). A.P. also repeatedly called Cusatis' cellphone or watched her parked car in the LaSalle Center parking lot (e.g., id. ¶¶ 54, 57). From December 2017 through December 2018, A.P. contacted Plaintiff at least 20 times (id. ¶ 78). Cusatis reporting this harassment to Ms. and Mr. Caso and Ms. Pulliam (id. ¶¶ 44, 45, 46). She claims that the Casos and Ms. Pulliam took no remedial action to prevent this further harassment (id. ¶¶ 47, 48).

On December 14, 2018, A.P. taped a card on Plaintiff's car window parked at LaSalle's lot (id. ¶ 75). The Niagara Falls Police Department then arrested him (id. ¶ 76). This was the first arrest arising from his harassment and assault of Cusatis (id.). Plaintiff then received a Temporary Order of Protection against A.P. (id. ¶ 77). Niagara Falls police later arrested A.P. twice for stalking and harassing Cusatis in February and November 2019 (id. ¶¶ 80, 115).

Plaintiff filed an Equal Employment Opportunity Commission ("EEOC") charge on October 5, 2018 (Docket No. 1, Compl. ¶¶ 11, 79). On August 20, 2019, the EEOC sent Plaintiff a Dismissal and Notice of Right to Sue letter (id. ¶ 12).

Plaintiff alleges the City continuously retaliated against her for reporting workplace sexual assault, sexual harassment, and racial slurs (id. ¶¶ 81-115). For example,

Ms. Caso questioned the accuracy of Cusatis' payroll time records without reason (id. ¶¶ 81-83). Cusatis claims that the City deprived her of opportunities for overtime (id. ¶¶ 89-90). She alleges that the City deprived the La Salle Center of janitorial and snow removal services and removed a second telephone line from the Center. She also claims that the City barred Plaintiff from the Duke Senior Center despite the Duke Center exclusively hosting mandatory sexual harassment training. Cusatis also claims that the City delayed or mislaid her W-2 forms and pay statements. (See id. ¶¶ 87-114.) She also claims that she received the incorrect form to report her sexual assault and was asked for the correct form seven months later (id. ¶¶ 84-86).

B. Causes of Action

Cusatis alleges three causes of action. The First Cause of Action alleges a hostile work environment because of sex and sexual harassment in violation of Title VII, 42 U.S.C. § 2000e-2(m) (id. ¶¶ 124-26). The Second Cause of Action alleges racial discrimination also in violation of Title VII (id. ¶¶ 128-30). The Third Cause of Action alleges retaliation for opposing discrimination in violation of Title VII (id. ¶¶ 132-34).

The Complaint only names the City as a Defendant; the Casos, Ms. Pulliam and A.P. were not sued.

C. The City's Motion for Summary Judgment (Docket No. 35)

The City answered the Complaint on December 6, 2019 (Docket No. 5).

The City now moves for summary judgment (Docket No. 35). After extensions of the briefing schedule and granting leave to file briefs that exceed page limitations (Docket Nos. 37, 40, 42, 45, 46, 48, 36, 38, 41, 47, 43, 59), responses were due by February 17,

2023 (Docket No. 41), and reply by March 24, 2023 (Docket No. 47). Upon timely briefing (Docket Nos. 44, 50), the Motion is deemed submitted.

D. Facts Asserted in Motion for Summary Judgment

The parties submitted the City's Statement of Material Facts (Docket No. 35) and Plaintiff's Response thereto (Docket No. 44). Plaintiff generally does not dispute the facts asserted by Defendant in its Statement save for some details that may not be material or are argumentative. Material disputes will be noted below as this Court cites Defendant's Statement.

From review of these Statements and the Complaint, Plaintiff states three categories of allegations (compare Docket No. 35, Def. Statement with Docket No. 44, Pl. Response at 1 n.1). The first arose from Cusatis finding the box with the racial slur in the LaSalle Center maintenance closet (Docket No. 35, Def. Statement ¶¶ 7-12; cf. Docket No. 44, Pl. Response ¶¶ 7-12). Second are instances of harassment by A.P. and the City's responses to Cusatis' complaints about this harassment (Docket No. 35, Def. Statement ¶¶ 13-54; cf. Docket No. 44, Pl. Response ¶¶ 13-54). Third are what the City terms "Other Work Issues" (Docket No. 35, Def. Statement at page 9), examples of alleged City retaliation against Cusatis (id. ¶¶ 55-67).

1. Box in Closet

On November 22, 2017, Cusatis called the Niagara Falls Police Department to report discovering the box with the racial slur on it (Docket No. 35, Def. Statement ¶ 7).

The parties agree that John Caso asked which employees had access to the maintenance closet and then asked the identified maintenance worker whether he wrote on the box (which the worker denied) (Docket No. 44, Pl. Response ¶ 11; cf. Docket

No. 35, Def. Statement ¶ 11). Management concluded that they could not determine who wrote on the box (Docket No. 35, Def. Statement ¶ 12; cf. Docket No. 44, Pl. Response ¶ 12).

2. A.P. Incidents with Plaintiff

According to Plaintiff, on December 6, 2017, Cusatis said goodbye to A.P., hugging him as he departed (Docket No. 35, Def. Statement ¶ 14). Citing her deposition testimony (Docket No. 44, Pl. Atty. Affirm., Ex. C, Pl. EBT Tr. at 133), Cusatis claims she was a hugger, and hugged senior center participants. After hugging A.P., however, he grabbed her and commented on her breasts by saying they were “nice” (Docket No. 44, Pl. Response ¶ 14; Docket No. 44, Pl. Atty. Affirm., Ex. C, Pl. EBT Tr. at 133-34; see Docket No. 35, Def. Statement ¶ 14). On December 7, 2017, Cusatis reported A.P.’s assault to her immediate supervisor, Rebecca Caso (Docket No. 44, Pl. Response ¶ 13), and to the police and John Caso (Docket No. 44, Pl. Response ¶¶ 16, 17).

John Caso then sent A.P. a letter (signed by Rebecca Caso and dated December 8, 2017) banning A.P. from the LaSalle Senior Center due to this alleged sexual assault (Docket No. 35, Def. Statement ¶¶ 18-20; Docket No. 44, Pl. Atty. Affirm. Ex. K). Before receiving that letter, however, A.P. returned to the LaSalle Senior Center and Cusatis kicked him out (Docket No. 35, Def. Statement ¶ 21). On January 2, 2018, A.P. contacted John Caso and Rebecca Caso to discuss the December 2017 incident and they reiterated that he remained barred from the LaSalle Senior Center (id. ¶ 26).

The City claims that months later Cusatis reported to Ms. Caso that A.P. called Cusatis’ personal cellphone (id. ¶ 27). She claims, however, that she reported to Ms. Caso each call A.P. made to Cusatis from December 2017 until June 2018 (Docket

No. 44, Pl. Statement ¶ 27). Ms. Caso replied that Cusatis should contact the police and block A.P.'s number from her personal cellphone. The City claims that Ms. Caso said she had no ability to prevent A.P. from calling her in the future. (Docket No. 35, Def. Statement ¶¶ 28, 29.)

In July 2018, Cusatis listened to the LaSalle Senior Center voicemail and heard two messages that she believed came from A.P. where he called Cusatis a "mud shark" (Docket No. 35, Def. Statement ¶ 30). She believed A.P. left messages because he was prejudiced and he saw an African American coworker in her office (id.; Docket No. 44, Pl. Atty. Affirm. Ex. C, Pl. EBT Tr. at 120). From December 2017 through June 2018, Cusatis reported to Ms. Caso that Cusatis received 6 to 8 calls or voicemail messages from A.P. (Docket No. 35, Def. Statement ¶ 32). Ms. Caso advised Cusatis to call the police after each call or message (id. ¶ 33). The parties dispute the number of occasions Cusatis called the police after A.P. harassed her (id. ¶¶ 37-38; but cf. Docket No. 44, Pl. Statement ¶¶ 37-38).

On July 5, 2018, A.P. approached Cusatis while she was going to her car parked on LaSalle Senior Center premises (Docket No. 35, Def. Statement ¶ 34). Plaintiff called the police (id. ¶ 36). Cusatis then reported to Ms. Caso that A.P. entered the LaSalle parking lot about four times that month (id. ¶ 39) with Ms. Caso again instructing Cusatis to call the police (id. ¶ 40). Cusatis, however, believed that Ms. Caso herself could have called the police (Docket No. 44, Pl. Statement ¶ 41).

On August 3, 2018, Cusatis found a print-out of an email chain containing pictures of scantily clad women apparently from A.P. (Docket No. 35, Def. Statement ¶ 45; Docket No. 44, Pl. Atty. Affirm. Ex. L). Cusatis called the police who declined to pursue this

matter because there was insufficient evidence that A.P. placed the printed email on her desk (Docket No. 35, Def. Statement ¶ 48; Docket No. 44, Pl. Response ¶¶ 47, 48).

On December 14, 2018, the Niagara Falls Police arrested A.P. charging him with forcible touching from the December 2017 incident (Docket No. 35, Def. Statement ¶ 51). Cusatis also obtained a Temporary Order of Protection (id. ¶ 52).

A.P. was arrested again on February 27, 2019, because he either came onto LaSalle Senior Center premises or called Cusatis (id. ¶ 53). Cusatis then received a permanent Order of Protection against A.P. from July 18, 2019. A.P. came back to LaSalle Senior Center on November 5, 2019, while Cusatis was present. The police then arrived and arrested A.P. again. (Id. ¶ 54.)

3. Acts of Alleged Retaliation

Cusatis cites several acts she claims the City performed against her in retaliation for her hostile work environment complaints (see Docket No. 35, Def. Memo. at 13). She complained that she was required by City directive to sign her timesheet and to report to an administrative building to submit her timesheets (Docket No. 1, Compl. ¶¶ 83, 106-07). She complains about the timeliness of delivery of her W-2 forms in 2017 and 2018 (id. ¶¶ 91, 104). Plaintiff claims that she was denied overtime opportunities at the Duke Senior Center (id. ¶¶ 89-90). The City ceased posting job and other notices at the La Salle Senior Center (id. ¶ 105). Next, she claimed that the City did not provide her a vacation buyback form (id. ¶ 108). Plaintiff complains that Ms. Caso stopped speaking to her, communicating only by text (id. ¶ 109). Finally, Plaintiff complained about the maintenance of La Salle Senior Center grounds related to trash disposal and snow and ice removal (id. ¶¶ 92-95, 98-102, 105, 111, 113).

As asserted in this Motion for Summary Judgment, in December 2017, John Caso required Cusatis to start signing her timesheets consistent with longstanding city policy (Docket No. 35, Def. Statement ¶¶ 55, 56). Plaintiff claims that for years she was not required to sign her timesheets until John Caso's declaration (Docket No. 44, Pl. Response ¶ 56).

As for overtime at the Duke Senior Center, the City claims that overtime was cut back due to budget constraints starting in 2010 (Docket No. 35, Def. Statement ¶ 57). Cusatis counters that she had worked overtime at the Duke Center. Further, by denying overtime there on Election Day (with A.P. voting at the LaSalle Center), Cusatis claims she lost overtime opportunities on Election Day. (Docket No. 44, Pl. Response ¶ 57.) In December 2019, Cusatis filed a grievance through her union complaining about the unfair distribution of overtime but that grievance was denied (Docket No. 35, Def. Statement ¶ 58).

The parties dispute whether the City sent Plaintiff her W-2 forms in 2017 and 2018 (see Docket No. 44, Pl. Response ¶ 59; but cf. Docket No. 35, Def. Statement ¶ 59). The City claims that it sent her the W-2s in those years and that she received them (Docket No. 35, Def. Statement ¶ 59). Cusatis, however, argues that the 2017 W-2 was left with another employee and she received the form in February 2018. (Docket No. 44, Pl. Response ¶ 58.) She alleges in her Complaint that she did not receive the 2018 W-2 form, but it was given to another employee who left them in the lobby of the LaSalle Senior Center over a weekend and eventually were lost (Docket No. 1, Compl. ¶ 104). She does not amplify this allegation in her response to the Summary Judgment Motion.

Regarding ice and snow removal, Cusatis complained to Ms. Caso in 2017 or 2018 that the City was not removing snow at the LaSalle Senior Center (Docket No. 35, Def. Statement ¶ 60). She now adds that snow was not cleared from the LaSalle site through December 2020, when Cusatis was terminated (Docket No. 44, Pl. Response ¶ 60). The City counters that Ms. Caso reported the removal situation to the deputy director of public works (Docket No. 35, Def. Statement ¶ 61) but Cusatis disputes the efficacy of Ms. Caso's reports (Docket No. 44, Pl. Response ¶ 61).

Cusatis also complained that garbage was not collected from the LaSalle Senior Center for several weeks in July 2018 (Docket No. 35, Def. Statement ¶ 62). She adds that sometimes garbage was not collected for more than a week at a time (Docket No. 44, Pl. Response ¶ 62). Ms. Caso contacted public works to address this (Docket No. 35, Def. Statement ¶ 63) but Cusatis claims that she had to call public works as well because some parks workers were not doing their jobs (Docket No. 44, Pl. Response ¶ 63).

In September 2019 telephone line work was performed and the Niagara County nutrition program's telephone line was disconnected during this work. Cusatis learned that the City disconnected that County line. It was later reinstated after about a month. (Id. ¶ 66.) The Complaint alleged that it was the Senior Center's telephone line that was disconnected (Docket No. 1, Compl. ¶ 111). Plaintiff has not established the harm to her employment or the Senior program from the month-long disconnection of the Niagara County telephone line.

As for the vacation buyback form, in August 2019 Ms. Caso learned that employees did not receive that form; Ms. Caso contacted Ms. Pulliam to rectify the matter (Docket No. 35, Def. Statement ¶ 67). Plaintiff now claims that she was not aware of

other employees receiving that form and she concluded that she was being deprived of that form in retaliation for her discrimination complaints (Docket No. 44, Pl. Response ¶ 67). Without receiving that form in a timely manner, Plaintiff claims that she lost an opportunity to buy back vacation time in 2019 (id.).

The parties do not address posting of job notices at LaSalle Senior Center or how Ms. Caso communicated with Cusatis as alleged in the Complaint (cf. Docket No. 1, Compl. ¶¶ 105, 109; Docket No. 44, Pl. Memo. at 28).

4. EEOC Charge

On or about October 5, 2018, Plaintiff filed charges with the EEOC and the New York State Division of Human Rights alleging sex discrimination and retaliation (Docket No. 35, Def. Statement ¶ 68). The City claims that Plaintiff did not allege race discrimination in her charge (Docket No. 35, Def. Statement ¶ 69) but Cusatis (while admitting she did not check the "race" box on the form) argues that the narrative in the EEOC charge alleged race discrimination from racial slurs made by A.P. (Docket No. 44, Pl. Response ¶ 69; see Docket No. 35, Def. Atty. Affirm., Ex. S, EEOC Charge Nos. 7, 12, 13). The EEOC dismissed her charge (Docket No. 35, Def. Statement ¶ 70).

## III. Discussion

### A. Generally Applicable Standards

#### 1. Summary Judgment

Summary judgment is appropriate if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law," Fed. R. Civ. P. 56(a). A fact is "material" if it "might affect the outcome of the suit under the governing law," Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 106 S.Ct. 2505,

91 L.Ed.2d 202 (1986). An issue of material fact is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party," id.

The movant seeking summary judgment has the burden (through pleadings, depositions, answers to interrogatories, admissions, affidavits, and other materials, Fed. R. Civ. P. 56(c)(1)) to demonstrate the absence of a genuine issue of material fact, Ford v. Reynolds, 316 F.3d 351, 354 (2d Cir. 2003).

In deciding a Motion for Summary Judgment, the evidence and the inferences drawn from the evidence must be "viewed in the light most favorable to the party opposing the motion," Addicks v. S.H. Kress & Co., 398 U.S. 144, 158-59, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970). "Only when reasonable minds could not differ as to the import of evidence is summary judgment proper," Bryant v. Maffucci, 923 F.2d 979, 982 (2d Cir. 1991). The function of the Court is not "to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue of fact for trial," Anderson, supra, 477 U.S. at 249. "Assessment of credibility and choices between conflicting versions of the events are matters for the jury, not for the court on summary judgment," Rule v. Brine, Inc., 85 F.3d 1002, 1011 (2d Cir. 1996).

But a "mere scintilla of evidence" in favor of the nonmoving party will not defeat summary judgment, Anderson, supra, 477 U.S. at 252. A nonmoving party must do more than cast a "metaphysical doubt" as to the material facts; it must "offer some hard evidence showing that its version of the events is not wholly fanciful," Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). That is, there must be evidence from which the jury could reasonably find for the nonmoving party, Anderson, supra, 477 U.S. at 252.

2. Hostile Work Environment due to Sexual Harassment and Discrimination

As for the First Cause of Action, "the sine qua non of a gender-based discriminatory action claim under Title VII is that 'the discrimination must be because of sex,'" Patane v. Clark, 508 F.3d 106, 112 (2d Cir. 2007) (quoting Leibowitz v. N.Y. City Transit Auth., 252 F.3d 179, 189 (2d Cir. 2001)). "It is axiomatic that mistreatment at work, whether through subjection to a hostile environment or through such concrete deprivations as being fired or being denied a promotion, is actionable under Title VII only when it occurs because of an employee's sex, or other protected characteristic," Brown v. Henderson, 257 F.3d 246, 252 (2d Cir. 2001).

To prevail on hostile work environment for either sex or race, Plaintiff has to show that the harassment was sufficiently severe or pervasive to alter the conditions of her employment and create an abusive working environment and there is a specific basis for imputing the conduct creating the hostile work environment to the employer, Summa v. Hofstra Univ., 708 F.3d 115, 124 (2d Cir. 2013) (quotation and citation omitted) (Docket No. 35, Def. Memo. at 3). This is assessed upon the totality of circumstances, Gorzynski v. JetBlue Airways Corp., 596 F. 3d 93, 102 (2d Cir. 2010) (id. at 4).

To extend liability for harassment by a non-employee to an employer, Plaintiff must demonstrate that the employer "failed to provide a reasonable avenue for the complaint or that it knew, or in the exercise of reasonable care should have known, about the harassment, yet failed to take appropriate remedial action," Summa, supra, 708 F.3d at 124 (id. at 3-4).

3. Race Discrimination

Cusatis alleges race discrimination in her Second Cause of Action. Title VII of the Civil Rights Act of 1964, as amended, makes unlawful employment practice because of the employee's race, see 42 U.S.C. § 2000e-2(a)(1). An unlawful employment practice "is established when the complaining party demonstrates that race . . . was a motivating factor for any employment practice, even though other factors also motivated the parties," 42 U.S.C. § 2000e-2(m).

Race discrimination can be shown either by direct evidence (not applicable here), Trans World Airlines, Inc. v. Thurston, 469 U.S. 111, 121, 105 S.Ct. 613, 83 L.Ed.2d 523 (1985), or proof of circumstances to infer discrimination through the McDonnell Douglas burden shifting analysis, McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802-04, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973)

Under the McDonnell Douglas rubric, Plaintiff initially must establish a prima facie case of discrimination, McDonnell Douglas, supra, 411 U.S. at 802. While this prima facie case standard is not onerous, Texas Dep't of Community Affairs v. Burdine, 450 U.S. 248, 253, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981), the prima facie case serves the important function of eliminating "the most common nondiscriminatory reasons for the plaintiff's rejection," id. at 253-54. Plaintiff satisfies that standard by showing that (1) that she belongs to a racial minority or protected class; (2) that she qualified for her job; (3) that she suffered an adverse employment action; and (4) that the adverse employment action occurred under circumstances giving rise to an inference of discriminatory intent, e.g., Holcomb v. Iona College, 521 F.3d 130, 138 (2d Cir. 2008). Cusatis proves this by the preponderance of the evidence within her ultimate burden of persuading a trier of fact that

the City intentionally discriminated against her, the latter burden remaining "at all times with" Cusatis, Burdine, supra, 450 U.S. at 252-53.

In Holcomb, the Second Circuit held that an employer may violate Title VII if it acts against an employee for her associations with a person of another race, Holcomb, supra, 521 F.3d at 138; see Chalmers v. City of N.Y., No. 20 Civ. 3389, 2022 WL 2078208, at *4 (S.D.N.Y. June 9, 2022). There, plaintiff Craig Holcomb was a white assistant coach who married a black woman and contended that he was fired for his marriage, Holcomb, supra, 521 F.3d at 131-32. The court held that belonging to a protected class was not restricted to members of the class but it includes those associating with the class, id. at 138-39.

Plaintiff further needs to show that "the materially adverse action was 'a change in working conditions [that is] more disruptive than a mere inconvenience or an alteration of job responsibilities,'" Banks v. General Motors, No. 14CV970, 2020 WL 6827707, at *14 (W.D.N.Y. Nov. 20, 2020) (Skretny, J.).

Upon Cusatis meeting this prima facie case burden, that burden shifts to Defendant to articulate some legitimate, non-discriminatory reason for its action, McDonnell Douglas, supra, 411 U.S. at 802 Once this burden is met, the prima facie case burden ends and the burden of proof shifts back to Plaintiff to show that the stated non-discriminatory reason was pretext, id. at 804; Burdine, supra, 450 U.S. at 253. The ultimate burden of persuasion remains with Plaintiff, Burdine, supra, 450 U.S. at 253.

4. Title VII Retaliation

To establish a prima facie case for retaliation under Title VII for her Third Cause of Action, Cusatis must show (1) participation in a protected activity known to the employer,

(2) an employment action disadvantaging the employee, and (3) a causal connection between the protected activity and the adverse action, Terry v. Ashcroft, 336 F.3d 128, 140-41 (2d Cir. 2003) (quotation omitted) (Docket No. 44, Pl. Memo. at 26). The protected activity must be the but-for cause of the adverse action, University of Tex. Sw. Med. Ctr. v. Nassar, 570 U.S. 338, 362, 133 S.Ct. 2517, 186 L.Ed.2d 503 (2013) (id.).

A plaintiff engages in a protected activity where she opposes employment practices outlawed by Title VII, makes an EEOC charge, or participates in an investigation arising from a discrimination charge, Davis v. New York State Dep't of Corrections Attica Correctional Facility, 110 F. Supp. 3d 458, 462 (W.D.N.Y. 2015) (Wolford, J.) (quoting Bundschuh v. Inn on the Lake Hudson Hotels, LLC, 914 F. Supp. 2d 395, 405 (W.D.N.Y. 2012) (Siragusa, J.). "[I]n order to constitute a protected activity for purposes of a retaliation claim, the complaint must be related to discrimination on a basis prohibited by Title VII," Bennett v. Hofstra Univ., 842 F. Supp. 2d 489, 500 (E.D.N.Y.2012).

An adverse action in retaliation must be "'more disruptive than a mere inconvenience or alteration of job responsibilities,'" Sosa v. New York City Dep't of Educ., 368 F. Supp. 3d 489, 511 (E.D.N.Y. 2019) (quoting Galabya v. New York City Bd. of Educ., 202 F.3d 636, 640 (2d Cir. 2000)). Mere petty slights are not enough to state a retaliatory adverse employment action, Sosa, supra, 368 F. Supp. 3d at 518 (citing cases); Collymore v. City of New York, No. 16-CV-08270, 2018 WL 3014093, at *9 (S.D.N.Y. June 14, 2018) (holding plaintiff failed to plead adverse employment action from, among other allegations, shift changes, being yelled at during meetings, denial of overtime, court concluding these allegations were petty slights and minor annoyances, not actionable adverse actions), aff'd in part, 767 F. App'x 42 (2d Cir. 2019) (summary

Order). Unlike an adverse action for a discrimination claim, for a retaliation claim that action should dissuade a reasonable worker from making or supporting a discrimination charge, e.g., Sosa, supra, 368 F. Supp. 3d at 517; quoting Vega v. Hempstead Union Free Sch. Dist., 801 F.3d 72, 90 (2d Cir. 2015); Burlington N. & Santa Fe Ry. v. White, 548 U.S. 53, 57, 126 S.Ct. 2405, 165 L.Ed.2d 345 (2006). The employment action here must be material to "separate significant from trivial harms" because Title VII is not "'a general civility code for the American workplace.' Oncale v. Sundowner Offshore Services, Inc., 523 U.S. 75, 80, 118 S.Ct. 998, 140 L.Ed.2d 201 (1998)," White, supra, 548 U.S. at 68.

B. Parties' Contentions

The City argues that Cusatis cannot establish a hostile work environment from her sex or race (Docket No. 35, Def. Memo. at 3-11, 22-24). The City denies that there was any basis for imputing A.P.'s conduct to the City (id. at 1-2, 6). The City contends that these incidents (including the single sexual assault) from the totality of circumstances were neither severe nor pervasive (id. at 3, 4-6). The City also claims it took appropriate remedial action in writing to A.P. barring him from the LaSalle Senior Center to exculpate it from hostile work environment liability (id. at 3-4; cf. Docket No. 44, Pl. Memo. at 18). Further, the City argues that Cusatis has not alleged or proved that A.P.'s activities interfered with her job requirements to state a hostile work environment claim (Docket No. 35, Def. Memo. at 5-6).

The City also rejects imputing A.P.'s actions to it because the City provided Cusatis with adequate avenues to complain and later took remedial action by banning A.P. (id. at 6-7, 7-9).

Next, the City claims that Plaintiff cannot establish her retaliation claim (id. at 11-17). The City only claims Cusatis' complaint following the sexual assault is the protected activity (id. at 12). It then denies there was any adverse employment action against Cusatis (id. at 12-17).

As for the Second Cause of Action, the City claims that Cusatis failed to exhaust administrative remedies for her race discrimination claim by failing to mark her EEOC form a claim for racial discrimination (id. at 20-21; see Docket No. 35, Def. Atty. Affirm. ¶ 21, Ex. S). Since she alleges only a single racial incident (or at most two instances) of discrimination, with A.P.'s slur not connected to Cusatis, the City concludes that Cusatis cannot establish a hostile work environment based on race (Docket No. 35, Def. Memo. at 21, 22-23).

In response, Cusatis first argues that there are genuine issues of material fact that preclude summary judgment (Docket No. 44, Pl. Memo. at 17-18). There are issues of material fact as the severity and pervasiveness of workplace harassment (id. at 19). Cusatis claims she was subject to race-based discrimination from associational discrimination, Holcomb, supra, 521 F.3d at 133-39 (id. at 25). Further, Cusatis alleged race discrimination on her EEOC application in her narrative of her claim despite not checking the "Race" box on that form (id. at 26; see Docket No. 35, Def. Atty. Affirm. Ex. S, at 3, 1). She claims that she was the subject of retaliation.

Cusatis, however, did not address the City's rejection of a racially hostile work environment claim (see Docket No. 50, Def. Reply Memo. at 8 n.1).

The City replies that a single incident fails to state a severe or pervasive workplace harassment claim (Docket No. 50, Def. Reply Memo. at 1-2). Next, Cusatis fails to allege

a high degree of control over a private citizen to impute A.P.'s liability to the City (id. at 4). As for the Second Cause of Action, City claims that Cusatis for the first time alleges associational discrimination because she did not do so either in her EEOC complaint or the Complaint filed here (id. at 8-9). Nevertheless the City contends that Cusatis still needed to allege that she suffered race discrimination for her own race (id. at 8-10). As for the Third Cause of Action, the City concludes that Cusatis did not establish retaliation from the disparate incidents she cites (id. at 12). Cusatis also failed to make a causal connection between her protected activity (complaining about A.P.'s assault) and the alleged adverse actions (the alleged retaliatory acts) (id. at 12-13).

C. Dismissal of Punitive Damages Claims against the City

This Court first can briefly dispose of Cusatis' punitive damages claim (see Docket No. 1, Compl. ¶ 135, Prayer for Relief d.). Cusatis withdraws her punitive damages against Niagara Falls (Docket No. 44, Pl. Memo. at 29-30), see City of Newport v. Fact Concerts, 453 U.S. 247, 271, 101 S.Ct. 2748, 69 L.Ed.2d 616 (1981), thus those claims are dismissed.

D. Plaintiff Does Not Establish a Hostile Work Environment Due to Sex

Cusatis claims that A.P.'s sexual assault was sufficiently severe and pervasiveness as a single incident to state a hostile work claim. The City argues that her single sexual assault (however egregious) is not sufficiently severe or pervasive to constitute workplace hostile environment to make the City liable for a third person's action.

A single act "can create a hostile work environment if it in fact works a 'transformation of the plaintiff's workplace,' Reid v. Ingerman Smith LLP, 876 F. Supp. 2d

176, 184 (E.D.N.Y. 2012) (quoting Alfano v. Costello, 294 F.3d 365, 374 (2d Cir. 2002)). The court in Domingues v. Barton Chevrolet Cadillac, No. 18-CV-7772 (PMH), 2021 WL 637016, at *4-5 (S.D.N.Y. Feb. 17, 2021), noted that the Second Circuit "has repeatedly held that evidence of a 'single incident' of sexual harassment that is 'extraordinarily severe' can establish an objectively hostile work environment," id. at *4 (citing cases). As observed by the Second Circuit, "direct contact with an intimate body part constitutes one of the most severe forms of sexual harassment," Redd v. New York State Div. of Parole, 678 F. 3d 166, 180 (2d Cir. 2012). A single incident becomes severe enough to constitute a hostile work environment "when the physical contact surpasses what (if it were consensual) might be expected between friendly coworkers . . . it becomes increasingly difficult to write the conduct off as a pedestrian annoyance," Redd, supra, 678 F.3d at 177 (quoting, with emphasis added but not reproduced here, Patton v. Keystone RV Co., 455 F.3d 812, 816 (7th Cir. 2006)).

Courts have held that a single instance of grabbing a litigant's breast when conducted with sufficient severity constitutes a hostile work environment, Reid, supra, 876 F. Supp. 2d at 185; Domingues, supra, 2021 WL 637016, at *4-5; see also Swiderski v. Urban Outfitters, Inc., No. 14-CV-6307, 2017 WL 6502221, at *5 (S.D.N.Y. Dec. 18, 2017) (Docket No. 44, Pl. Memo. at 19).

Here, Cusatis alleges that A.P. grabbed her breasts (Docket No. 44, Pl. Atty. Affirm. Ex. C, Pl. EBT Tr. at 133-34). This egregious instance is an objectively hostile conduct, Domingues, supra, 2021 WL 637016, at *4.

Even if the severity and pervasiveness of a single egregious incident (coupled with subsequent harassment) meets the severity element (or perhaps raises material issues

of fact on this front (cf. Docket No. 44, Pl. Memo. at 18-19)), Cusatis fails to establish the City had a high degree of control over A.P., a private citizen, to make the City liable for his egregious conduct, Leroy v. Delta Air Lines, No. 21-267-CV, 2022 WL 12144507, at *3 (2d Cir. Oct. 27, 2022) (summary Order); Menaker v. Hofstra Univ., 935 F.3d 20, 39 (2d Cir. 2019); see Summa, supra, 708 F.3d at 124 (considering the extent of the employer's control and any other legal responsibility that employer may have for the conduct of the non-employee, quoting 29 C.F.R. § 1604.11(e)).

Finding employer control over a non-employee to establish liability, in Summa, the court concluded that Hofstra University has control over its football players to impute one player's sexual harassment of plaintiff Lauren Summa to Hofstra University, Summa, supra, 708 F.3d at 123-24, 120; see also Menaker, supra, 935 F.3d at 39. Ultimately, the court in Summa denied liability because the University did not act negligently but had taken appropriate remedial action, Summa, supra, 708 F.3d at 124.

A case akin to Cusatis' is Leroy, where African American flight attendant Clara Leroy sought to impose liability upon her employer, Delta Air Lines, for a passenger's racist remarks, 2022 WL 12144507, at *1. The Second Circuit affirmed the dismissal Leroy's retaliation claim under New York City Human Rights Law, id. at *2, 3-4. The New York City Human Rights Law requires the employee to have a good-faith, reasonable belief that she opposed an unlawful employment practice to state a retaliation claim, id. at *1; see Reed v. A.W. Lawrence & Co., 95 F.3d 1170, 1178 (2d Cir. 1996). The Second Circuit then concluded that "on the facts as alleged, Leroy could not have reasonably and in good faith believed that the passenger's comment . . . was an unlawful employment practice," Leroy, supra, 2022 WL 12144507, at *1. The City's Human Rights Law extends

vicarious liability to other employees' actions and not to unaffiliated third parties like passengers, id. at *3. The Second Circuit then applied the Menaker and Summa Title VII standards which extend employer liability to those not employed by them but under their high degree of control, id. While not considering whether Delta Air Lines had that degree of control over this passenger, the Second Circuit held that Leroy failed to allege Delta's negligence that permitted or facilitated the passenger's discriminatory conduct, id. at *4 (quoting Menaker, supra, 935 F.3d at 39).

Here, Cusatis' claim against the City for A.P.'s action is like the passenger's racist remarks in Leroy where Delta Airlines was not held liable for the passenger's remark. A.P. was a city resident and senior citizen who attended the LaSalle Senior Center. After his sexual assault of Cusatis, the City used the only method under its disposal in controlling A.P. by barring him from that center.[3] The City did not have a "high degree of control" over him or his behavior to be liable for his sexually harassing behavior, Menaker, supra, 935 F.3d at 39; Summa, supra, 708 F.3d at 124.

As for the City's negligence in allowing this purported harassment, Cusatis has not established she lacked reasonable avenue of complaint. She complained of A.P.'s initial assault and subsequent incidents of harassment.

Cusatis relies upon the City's Workplace Violence Prevention Policy (Docket No. 44, Pl. Memo. at 22; Docket No. 35, Def. Atty. Affirm. Ex. E, at 9). "Workplace Violence" is defined in that policy as "violent acts (including physical assaults and threats of assaults) directed toward persons at work or on duty" or "any physical assault,

[3] Plaintiff argues that the City should have banned A.P. from the Duke Senior Center where Plaintiff worked sometimes for overtime. Cusatis, however, has not shown any interaction she had with A.P. at the Duke Center to warrant his ban from that facility.

threatening behavior or verbal abuse occurring in the work setting" (id. at 2). As cited in that policy, then-director of human resources Ruby Pulliam was responsible for assisting the Niagara Falls Police Department in responding to workplace violence and notifying the police of workplace violence incidents reported to the Department of Human Resources (id. at 9; Docket No. 44, Pl. Memo. at 22). The only workplace violence incident here was the December 6, 2017, assault. A.P.'s subsequent harassment does not evince violence or the threat of violence to require the City to contact the police under its Workplace Violence Prevention Policy. Instead, as criminal complainant, the onus was upon Cusatis (as she was advised by City staff) to contact the police after A.P.'s subsequent harassment. Furthermore, Cusatis has not named Ms. Pulliam as a defendant for her alleged dereliction of duty under that policy.

The fact that the City reassigned another employee upon Cusatis' complaint did not make the City negligent when it did not do more than it did regarding A.P.'s harassment. She suggests that the City could have also banned him from the Duke Senior Center as well but Cusatis has not shown harassment instances occurring while she was at the Duke Center (see Docket No. 44, Pl. Memo. at 21, 9-10, 14-15). She only alleges (as retaliation) she was deprived of overtime opportunities at the Duke Senior Center because A.P. continued to go to that center, including overtime on Election Day (Docket No. 44, Pl. Response ¶ 57).

The City lacked control over A.P. and did what it could in banning him from Cusatis' primary workstation and where she was assaulted, the LaSalle Senior Center. She thus has not established the City's negligence to extend liability over the acts of a private citizen.

Further, Cusatis failed to show how her alleged harassment altered the conditions of her employment. While alleging A.P.'s actions and the City's purported failure to address them, Cusatis has not alleged how this harassment changed her conditions of employment. This differs from Hollis v. City of Buffalo, 28 F. Supp. 2d 812 (W.D.N.Y. 1998), where Magistrate Judge Heckman (on consent) found that a supervisor's conduct was sufficiently severe and pervasive over a year enough to alter the conditions of plaintiff Alberta Hollis's employment, with Hollis saying that she had to change her schedule or taking refuge in the lady's room to avoid the increasing offensive comments from that supervisor, Hollis, 28 F. Supp. 2d at 821. The City took remedial action in banning A.P. from the LaSalle Senior Center and Cusatis' supervisor advised her to report instances of harassment to the police.

Thus, this Court grants the City's Motion for Summary Judgment (Docket No. 35) dismissing the First Cause of Action.

E. Plaintiff also Does Not Establish Race Discrimination by the City

In her Second Cause of Action, Cusatis alleges two sources of race discrimination the City allegedly was responsible for: the box with slur on it and the slurs stated by senior center participant A.P. The City argues that Plaintiff is not in a racial minority and failed to allege race in her EEOC Charge thus failing to exhaust her administrative remedies before commencing this action (Docket No. 35, Def. Memo. at 22-23, 20-21; Docket No. 50, Def. Reply Memo. at 8-10).

1. Plaintiff Administratively Exhausted Her Race Discrimination Claim

To be actionable before this Court, Cusatis first needed to allege her race discrimination claim before the EEOC and exhaust her administrative remedies. Claims

not explicitly made in an EEOC Charge may be asserted here where these claims concern conduct within the scope of the EEOC investigation that can reasonably be expected to grow out of the charge, Hamzik v. Office for People with Dev'al Disabilities, 859 F. Supp. 2d 265, 277 (N.D.N.Y. 2012) (Docket No. 35, Def. Memo. at 21); Terry, supra, 336 F.3d at 151. This narrow exception (among other exceptions not germane here) acknowledges that EEOC Charges often are completed by the employee herself without benefit of counsel, Hamzik, supra, 859 F. Supp. 2d at 277 (quoting Deravin v. Kerik, 335 F.3d 195, 201 (2d Cir. 2003)). The purpose of the EEOC Charge is to alert the agency of the employee's claims of discrimination, with the focus upon the allegations made in the charge itself and the description of the discriminatory conduct, see Deravin, supra, 335 F.3d at 201; Hamzik, supra, 859 F. Supp. 2d at 277.

Cusatis here exhausted her race discrimination claim by discussing her claims in the attached narrative to her EEOC charge (Docket No. 35, Def. Atty. Decl. Ex. S, Narrative at 1, ¶¶ 7, 12-13; see Docket No. 1, Compl. ¶¶ 11, 79) and later alleged the elements of race discrimination in the Complaint (Docket No. 1, Compl. ¶¶ 15-19 (box in maintenance closet), 22, 42 (A.P. slurs)). This narrative afforded notice to the City of the race discrimination claim and described the offending conduct. Cusatis thus both administratively exhausted her race discrimination claim despite failing to check the EEOC form for "race."

2. Substantively, Cusatis Fails to Allege Race Discrimination

Cusatis has alleged belonging to a protected class (despite being Caucasian) of Caucasian challenged for their association with African Americans. She raised this by alleging associational discrimination in the narrative of her EEOC Charge (Docket No. 35,

Def. Atty. Affirm. Ex. S, Narrative at 1, ¶¶ 7, 12) and later in her Complaint (Docket No. 1, Compl. ¶¶ 15, 22, 42). The slurs alleged there ("N___r lover" and "mud shark") denigrates a Caucasian person for having relationships (or believed relationships) with African Americans or other races, Holcomb, supra, 521 F.3d at 138. Those slurs imply discrimination against a Caucasian for associating with other races, see id. Cusatis here alleged associational discrimination from the altered box in the maintenance closet and A.P.'s statements, showing her membership in a protected class.

Cusatis' qualification for her former position is not questioned.

At issue, however, are the remaining elements of her Title VII race discrimination claim: the adverse employment action and the inference of discriminatory intent. The alleged adverse action is A.P.'s slurs. To have the City liable it would have to be held responsible for A.P.'s statements and actions (as considered above for Cusatis' hostile work environment claim) and the City was negligent in not preventing the slurs.

The City, however, has no control over A.P. as a private citizen and as a senior center participant A.P. was not an agent of the City. A.P. allegedly called Cusatis' personal cellphone, an account not under the City's control. Thus, there is no adverse employment caused by the City or under its agent.

Further, as the City advanced (Docket No. 35, Def. Memo. at 22 (citing cases)), the number of slurs alleged here constitute isolated instances that are not actionable under Title VII. Mere utterance of an epithet does not affect the conditions of employment to implicate Title VII, Schwapp v. Town of Avon, 118 F.3d 106, 110 (2d Cir. 1997); see also e.g., Hannon v. Wilson Greatbatch, Ltd., No. 00CV203, 2002 WL 1012971, at *3-4, 7 (W.D.N.Y. Apr. 24, 2002) (Elfvin, J.) (Docket No. 35, Def. Memo. at 22). Here, Cusatis

presents at least three distinct instances of slurs. Coupled with the fact that the slurs arose not from a City official or employee but from a citizen and consumer of the City's senior center, see Leroy, supra, 2022 WL 12144507, at *1, 3-4 (dismissing harassment claim against airline for racist statements of passenger), this does not affect Cusatis' conditions of her employment. These alleged slurs are insufficient to state a race discrimination claim.

Further, Plaintiff also fails to show an inference of the City's discriminatory intent for the slurs of A.P. Again, the lack of the City's control over A.P. saps any discriminatory intent on the part of the City for A.P.'s actions.

This Court dismisses Cusatis' Second Cause of Action alleging race discrimination granting the City's Motion for Summary Judgment (Docket No. 35).

F. Retaliation for Opposing Discrimination

For her Third Cause of Action retaliation claim, Cusatis needs to allege participation in a protected activity, an employment action disadvantaging her, and causal connection between the protected activity and the employment action.

The protected activity is Cusatis' complaints about the sexual assault and A.P.'s racial epithets (Docket No. 1, Compl. ¶ 81; see Docket No. 44, Pl. Memo. at 27). She complained to her supervisors providing notice to the City. Cusatis alleges that the City retaliated against her for reporting workplace sexual assault and sexual harassment as well as racial slurs perpetrated by A.P. (Docket No. 1, Compl. ¶ 81). This constitutes protected activity in opposing alleged employment practices prohibited by Title VII for sex or race discrimination.

As for the employment action disadvantaging Cusatis, she alleges various actions by the City against her (handling her employment or tax forms, denial of overtime at the Duke Senior Center) or against the LaSalle Senior Center (maintenance at the Center) where Cusatis was the only City employee stationed (see Docket No. 44, Pl. Memo. at 27). Some of the alleged retaliatory actions (how Ms. Caso communicated with her and job postings at LaSalle) are not addressed in this Motion; Cusatis has not presented contrary evidence to show an issue of fact for those claims.

Another alleged retaliatory action was the City disconnecting one of two telephone lines to the LaSalle Senior Center. The disconnected line was a Niagara County telephone line not a City line. Cusatis does not allege that her office telephone line was disconnected or otherwise impacted by that repair save her repeated calls seeking restoration of that line (see Docket No. 1, Compl. ¶ 102). Although the City caused the disconnection of the County phone line, Cusatis has not alleged any deprivation because of it. Cusatis also has not made the connection between that utility work and her harassment complaints.

Cusatis complains about the City's maintenance of LaSalle Senior Center but her objection is not exclusively to her. All occupants and visitors to that Center would endure the snow removal and trash disposal by the City and not merely Cusatis. Cusatis merely speculates the lax maintenance was due to her being stationed at the LaSalle Senior Center. She fails to show that her complaints were the but-for cause for lax maintenance or snow removal. Cusatis' contention here applied to all occupants of the LaSalle Senior Center and not just her. She has not alleged discriminatory animus was a factor or such animus being a significant factor in failing to maintain the Center, therefore Cusatis fails

to state a claim for intentional discrimination, see Smith v. New York City Hous. Auth., 410 F. App'x 404, 406 (2d Cir. 2011) (summary Order, Americans with Disabilities Act disparate treatment claim).

Considering the totality of circumstances and the alleged retaliatory acts, Cusatis has not established how she was disadvantaged by them. These actions are petty slights and minor annoyances that are not actionable, see Sosa, supra, 368 F. Supp. 3d at 518. Cusatis cites mere inconveniences or alterations to her job responsibilities also not retaliatory adverse employment actions, see Galabya, supra, 202 F.3d at 640. Review of this litany of alleged City actions shows these actions were not materially averse to Cusatis and a reasonable employee would not be dissuaded from pursuing her discrimination claims against the City, see White, supra, 548 U.S at 68.

Finally, Cusatis has not established the crucial causal connection between her protected activity (her complaints about A.P.'s actions) and the City's retaliatory actions. As found with the example of maintenance at the LaSalle Senior Center, Cusatis generally fails to show that her protected activity (complaints of harassment) is but-for cause for these adverse actions.

Plaintiff cites disparate events (submission of timesheets; untimely receipt of W-2s forms; denial of overtime at the Duke Senior Center; failure to provide a vacation buy back form; facility maintenance at LaSalle Senior Center; and her immediate supervisor not speaking to her) that may be adverse employment actions without offering any connection to an example of discrimination or complaint commenced by Cusatis.

Further, there is no temporal proximity for Cusatis' complaints about the December 2017 incidents of A.P.'s assault and slurs and subsequent retaliatory acts for a causal

connection (Docket No. 50, Def. Reply Memo. at 12-13). Cusatis alleges retaliatory incidents occurring months after A.P.'s assault. For example, she complains about mishandling of her W-2 forms in 2018 (Docket No. 1, Compl. ¶ 104) over a year after the December 2017 incidents. The telephone line disconnection occurred in January 2019 (id. ¶ 102). Cusatis also complained about maintenance at LaSalle Senior Center in February 2018 and allegedly stopped picking up trash in July 2018 (id. ¶¶ 94, 92-93, 98). These (and other cited examples of retaliatory acts) occurred months after Cusatis' discrimination complaints for one to conclude a temporal link between these complaints and the alleged retaliation.

Therefore, this Court grants the City's Motion for Summary Judgment (Docket No. 35) dismissing the Third Cause of Action and, as a result, dismissing all of Cusatis' claims.

## IV. Conclusion

Plaintiff Theresa Cusatis fails to establish the City of Niagara Falls' control over A.P. to make the City liable for his egregious actions. Further Cusatis has not shown that A.P.'s harassing conduct altered the conditions of her employment. Therefore, the City's Motion for Summary Judgment (Docket No. 35) dismissing Cusatis' First Cause of Action alleging sex discrimination for a hostile work environment is granted.

Next, assuming Cusatis presented her race discrimination claim before the EEOC to administratively exhaust that claim, the few instances of slurs from A.P. (and the unknown author of the disfigured box) she alleges class membership from associational discrimination. Cusatis, however, has not established that the City discriminated against her from A.P.'s conduct because she has not shown an adverse employment action,

inferred discriminatory intent, or the City's control over A.P. to find municipal liability. This Court thus grants the City summary judgment dismissing her Second Cause of Action.

Cusatis fails to establish a causal connection between her protected activity—complaining about A.P.'s sexual assault and harassment—and the City's adverse actions (the alleged retaliatory acts) to state a Title VII retaliation claim. This Court also grants the City summary judgment dismissing Cusatis' Third Cause of Action for retaliation.

Plaintiff's punitive damages claim against the City also is dismissed. As a result, Defendant City of Niagara Falls' Motion for Summary Judgment (id.) is granted and this case is dismissed.

## V. Orders

IT HEREBY IS ORDERED, that Defendant's Motion for Summary Judgment (Docket No. 35) is GRANTED.

FURTHER, that the Clerk of Court is directed to CLOSE this case.

SO ORDERED.

Dated: July 27, 2023
Buffalo, New York

s/William M. Skretny
WILLIAM M. SKRETNY
United States District Judge